MOISE, Justice.
By án ex parte judgment Azelia Evans, wife of Willie Smith, was recognized as the sole and only heir of the decedent, Julius Evans, the issue of his marriage with Laurence Fournet, who died in 1913; as such she was sent and placed in possession of all of his property, valued at $3,865.-77. Thereafter, May Taylor Evans Nash and Julia Nicey Evans Colin sued to have this judgment set aside, claiming that their mother, Rosa Clarke, who died in 1942, had 'been the decedent’s lawful wife by second marriage, the ceremony having taken place on July 22, 1914, and that they are accordingly legitimate children, and not natural children, and as such entitled to share equally in the decedent’s estate with the issue of his first marriage. The ex parte judgment of possession was set aside, and judgment was rendered, sending and putting all three daughters in possession of decedent’s estate in the proportion of one-third each. From this judgment Azelia Evans Smith prosecutes an appeal.
The issue here is solely one of fact: was the second marriage a lawful, valid one? If it was not, appellant is entitled to the entire estate to the exclusion of appellees as natural children; if it was, appellees are legitimate, and the judgment appealed from is correct.
We are therefore called upon merely to weigh evidence, in conjunction with presumptions of law and fact.
Appellees offer in substantiation of their claim that the second union was lawful a marriage certificate showing that one Julius Evans and one Rosa Clarke were married by Michel A. Dauenhauer, First Justice of the Peace, Parish of Jefferson, on July 22, 1914, at Gretna, Louisiana; photostatic copies of the marriage license issued to these two persons and the marriage bond signed by one “Julius Evains”; a photostat of the birth registration of appellee Julia Nicey Evans (Colin) ;■ and a certificate of birth registration of appellee May Taylor Evans (Nash). The registration of Julia Nicey Evans designates her as the “lawful issue” of Julius Evans and Rosa Clarke. The registration of May Taylor Evans as lawful or otherwise is not indicated by the certification that her birth was registered, issued by the Bureau of Vital Records, City of New Orleans. They also offer the testimony of individuals who knew the deceased, their mother and themselves over a period of years, to the effect that they were always known as his children. However, for the reasons indicated infra, it is not necessary to consider the effect of general repute as establishing a sufficient presumption of legitimacy, since the documentary evidence offered is adequate in that respect.
*402 Appellant contends that the marriage ceremony took place, not between Rosa Clarke and her father, Julius Evans, but between Rosa Clarke and another man who was impersonating her father and who forged her father’s signatures on the marriage license and the marriage bond. In support of this contention she has offered testimony that the entire marriage ceremony was a plot, fraud or hoax perpetrated upon Julius Evans by his common-law wife, Rosa Clarke; that when he learned of it in 1918, four years later, he filed suit in the Civil District Court for the Parish of Orleans to have the “marriage” declared null and void; and that he drove Rosa Clarke and her children from his home and publicly stated that he was not married to her.
A reference to the suit brought by Julius Evans against Rosa Clarke, No. 124972 of the Civil District Court for the Parish of Orleans, in 1918, shows that she denied his allegations that there had been no marriage between them; that there had previously been rendered in the Juvenile Court a judgment condemning Julius Evans to pay a small alimony for the support of his child, Mary Taylor Evans (who- is appellee May Taylor Evans Nash) ; and that after the answer of Rosa Clarke (Evans) was filed no further proceedings were ever taken in that matter, notwithstanding the fact' that Rosa Clarke lived twenty-four years afterwards. It is worthy of consideration that four months after this answer was filed Julius Evans appeared before the Recorder of Births in New Orleans and declared that the child, Julia Nicey Evans, who had been born in the early part of 1919, was his “lawful” child. As far as this court is concerned, appellant therefore is urging a matter which in all probability is personal to her parent. An additional reason why the subject should no longer be pursued is the fact of the non-prosecution of the suit for the nullity of the marriage; a period of five years has expired, and the law considers that such suit has been abandoned. It is therefore a dead issue. Art. 3519, R.C.C., as amended by Act 107 of 1898.
A judge must be educated not only in the law, but he must also go to the school of the university of human experience, so that he can better evaluate testimony. A trial judge spends a large part of his time in studying witnesses, observing their demeanour while on the stand, and considering their testimony, in his effort to ascertain the truth. It is because of the personal contact with the witnesses- in the district court that, when the issue is a question of fact, the trial judge’s finding will not be disturbed unless manifestly erroneous. Jones v. Blossman, 209 La. 530, 25 So.2d 85; Roach v. Roach, 213 La. 746, 35 So.2d 597; Holmes v. Triggs, 214 La. 1083, 39 So.2d 739; Roy v. Louisiana State Dept. of Agriculture & Immigration, 216 La. 699, 44 So.2d 822. We think, after a review of this record, that there has been no error. The appellant has failed to overcome the *404 presumptions of law and of fact, and has not sustained the burden of proof imposed.
The judgment appealed from is affirmed, appellant to pay all costs.