LEE, Justice,
for the court:
Liberty Savings and Loan Association (Liberty) filed suit in the Circuit Court of Washington County, Honorable B. B. Wilkes, presiding, against Charles A. Mitchell (Mitchell) and others, for damages in the *209 sum of twenty-six million dollars ($26,000,-000) based on an alleged breach of fiduciary duty by Mitchell in the management of the association. After an extended period of time, during which the suit was pending, the defendants filed motions to dismiss the suit. The motions were taken under advisement and eventually sustained. Liberty has appealed from the final lower court order dismissing the suit, and assigns such dismissal as error.[1]
Did the lower court err in sustaining the motions of the appellees to dismiss under Mississippi Code Annotated Section 11-53-25 (1972) on the ground that Liberty had not shown good cause for its failure to bring the suit to trial?
Mitchell was active vice-president of Liberty from 1968 to about 1974. The other appellees were members of the board of directors at some time during the same period. Mitchell has asserted that those appellees had no operational authority during the time mentioned, and he assumes full responsibility for changes occurring while he was the active president or vice-president of the institution.
In early 1973, bank authorities discovered discrepancies in loans totalling some nineteen million dollars ($19,000,000) from 1968 to 1973, made by Mitchell to one Boyd L. Hobbs for construction and development projects. Subsequently, this suit was filed on February 18, 1975. On February 28, 1975, Liberty merged into Bankers Trust Savings and Loan Association (BTS&L), which went into receivership in 1976. Thereafter, it was succeeded by Depositors Savings Association (Depositors).
The chief counsel for Liberty and the individual having the responsibility for preparing Liberty’s case for trial, gathering together all information sought by the ap-pellees through depositions, and representing Liberty generally in the case, was Honorable Charles L. Sullivan. Appellee Mitchell answered the suit by filing a request for a bill of particulars on April 7, 1975, and was permitted until May 7, 1975, to file responsive pleadings to the complaint. Liberty supplied the bill of particulars on July 23, 1975, stating the Hobbs loans and their supporting collateral and appraisal. Liberty claims that it incurred seventeen thousand dollars ($17,000) accounting fees in the preparation of the bill of particulars.
From July 23, 1975 forward, until April 19, 1979, Mitchell and the other appellees filed numerous interrogatories and discovery material, and Mr. Sullivan was endeavoring as best he could to furnish the information and exhibits sought to be discovered. Without question, the case was complex, involved an enormous mass of documentary material, and required a tremendous amount of work and time to comply with discovery. Throughout the period mentioned, the attorneys on both sides were cooperative, courteous, and understanding in the matters, and continuances and extensions of time were agreed upon by opposing counsel.[2] Mitchell’s attorney wrote to Mr. Sullivan on April 11, 1979, and requested a specific date for production of discovery materials. An earlier letter from Mr. Sullivan dated January 29, 1979, indicated that discovery was nearly complete and required only final difficult computations by the accounting firm. Suffice it to say, at no time did appellees’ attorneys seek from the court sanctions against Liberty or compulsion to require production of the requested discovery material.
On April 18,1979, Mr. Sullivan died in an airplane crash. A member of the Sullivan firm notified opposing counsel of the tragedy and Mitchell’s counsel agreed to “lay this case on the back burner” until such time as matters had been straightened out. Immediately, the Sullivan firm contacted Depositors about retaining additional counsel to replace Mr. Sullivan as chief counsel. Pursuant to that contact, on April 27, 1979, *210 they conferred with members of the Edmund L. Brunini firm in Jackson with a view toward retaining that firm to proceed with the case. After spending approximately one hundred (100) hours in reviewing the case files, the firm decided that it would be unable to associate in the case. Immediately, members of the Sullivan firm contacted the Lake, Tindall firm in Green-ville for the same purpose, and, after a lengthy study of the files, that firm likewise was unable to associate in the case.
The appellees filed motions to dismiss the case on October 17, 1979. At the hearing on the motions, Liberty produced affidavits and evidence from Honorable William Spell of the Sullivan firm, Honorable Edmund L. Brunini and Honorable Lawrence E. Allison from the Brunini firm and Honorable Charles S. Tindall from the Lake, Tindall firm which set forth their work and review of the Liberty files subsequent to the death of Mr. Sullivan for a determination as to whether or not the Brunini and Tindall firms could associate in the case. The proof on behalf of Liberty showed without question that it was diligent in its efforts to seek trial counsel immediately following the death of Mr. Sullivan until the motions to dismiss were ruled upon. In fact, Liberty was finally successful in retaining the Wise, Carter, Childs and Caraway firm at or about the time the order was entered sustaining the motions to dismiss. The appel-lees declined to produce any evidence on the hearing of the motions and simply stated to the court that they would rely upon the record as made. No effort was made to show prejudice the appellees may have sustained over the period of time prior to the dismissal.
On November 8, 1979, the lower court rendered a letter opinion on the motions to dismiss Liberty’s action, and, in that opinion, stated that it would be dismissed as a stale case. [See Appendix]. The order followed the letter opinion. Mississippi Code Annotated Section 11-53-25 (1972), referred to therein, follows:
“The clerk of any court shall move the court to dismiss any cause pending therein in which no step has been taken for the two terms preceding; and the court shall, unless good cause be shown to the contrary, dismiss the same at the costs of the plaintiff or complainant.”
Osborne v. Vince, 240 Miss. 807, 129 So.2d 345 (1961), cited by the lower court, states:
“Miss.Code 1942, Recompiled, Section 1578, provides: ‘The clerk of any court shall move the court to dismiss any cause pending therein in which no step has been taken for the two terms preceding; and the court shall, unless good cause be shown to the contrary, dismiss the same at the costs of the plaintiff or complainant.’ In Mississippi Central Railroad Co. v. Brookhaven Lbr. and Mfg. Co., 1933, 165 Miss. 820, 147 So. 814, 815, it was held that the amendment of this statute in 1930 made it mandatory on the clerk and the court, ‘unless good cause be shown to the contrary.’ Since the file was not in the clerk’s office, he had no way of knowing about the case. Hence no motion was made by him under the statute, and for the same reason, the trial court did not dismiss the suit on his own motion. However, Section 1578 is a clear statement of legislative policy that stale cases should be dismissed for want of prosecution.” 240 Miss. at 809-810, 129 So.2d at 347.
It is not necessary for us to discuss the applicability of that statute here where no motion was made by the clerk to dismiss as a stale case. The trial court has the inherent right, independent of statute, to control its docket and is accorded reasonable latitude with respect to the setting, disposition and continuance of cases. 27 C.J.S. Dismissal and Nonsuit, § 65.1, at 430-431 (1959); Boydstun v. Perry, 249 So.2d 661 (Miss.1971). While courts have the responsibility to see that cases come on for trial as efficiently as may be practical, they will afford unto litigants, where at all possible, trial of those cases on the merits. As mentioned, this case is complex and has required tremendous preparatory work for trial. The record before us consists of six (6) volumes, which contain only matters pertaining to preparation for trial. A great *211 deal of expense has been incurred by all parties in their attempts to get the case ready for trial. We are of the opinion that it was not a stale case, whether considered under the verbiage of the statute, supra, or in the light of the court’s inherent power to dismiss causes which are not prosecuted. It was a live, viable and vibrant ease for litigation. We are of the opinion that the lower court erred in sustaining the motions to dismiss, that the judgment should be reversed, and the case remanded for trial on its merits.
CROSS-APPEAL
Appellees filed pleas in bar of the suit sub judiee before the motions to dismiss were sustained. Those pleas in bar were denied and appellees have cross-appealed, contending that the said pleas should have been sustained. Although appellants argue that the cross-appeal is impermissible, we hold that, under the facts here, where there is a final order of dismissal, the cross-appeal is proper and may be considered by this Court.
Appellees/cross-appellants contend that Liberty’s suit was barred and ground their pleas on the following propositions:
(1) Liberty was acquired by a successor corporation with full knowledge of all facts alleged in the Amended Declaration.
(2) The consideration paid for Liberty’s stock was fully discounted for the effect of damages alleged to have been suffered as a result of any acts on the part of Mitchell.
(3) Liberty is a defunct savings and loan association.
(4) The action can only inure to the benefit of present stockholders of the successor corporation, who would be prohibited from bringing suit by virtue of Mississippi Code Annotated Section 79-3-93 (1972).
The record reflects that BTS&L fully complied with Mississippi Code Annotated Section 81-11-45 (1972) in purchasing all properties and assets of Liberty, a savings and loan association. In effecting that purchase, on February 27, 1975, an agreement was executed by Liberty and BTS&L and on February 28, 1975, a bill of sale and assignment was executed by Liberty and accepted by BTS&L. The bill of sale and assignment provided in part as follows:
“THIS BILL OF SALE AND ASSIGNMENT WITNESSETH that for such good and sufficient consideration, the receipt of which is hereby acknowledged, Liberty hereby assigns and transfers to Bankers Trust as of 12:00 midnight on the date hereof, all the properties and assets of Liberty, both real and personal, tangible and intangible, of every kind and nature, and wheresoever located.”
The effect of the above instruments was to transfer and assign unto BTS&L all properties, assets and choses in action of every kind and nature, including the action sub judiee.
19 Am.Jur.2d Corporations § 1337, at 744 (1965) sets out the general rule concerning assignments of choses in action:
“According to most of the authorities which have considered the point, causes of action against directors or officers of a corporation for misconduct for mismanagement of its affairs are assignable and may be enforced by the assignee. An assignee of all the assets of an insolvent corporation, after such assignment, has been held to represent the corporation as well as its creditors; and unless he refuses to do so, he alone is authorized to bring an action against the former directors of the corporation for their negligence and mismanagement of its affairs.”
Mississippi Code Annotated Section 11-7-3 (1972) authorizes an assignee of choses in action to sue for and recover on the same in his own name, if the assignment is in writing, and, in the event suit has commenced prior to the assignment, (as here), the assignee may continue suit in the name of the original party. This Court has held that assignments may include actions for recovery of personal property, enforcement of contract rights, recovery for breach of contract, and for injuries to person or property. See Farmer v. Humphreys County Memorial Hospital, 236 Miss. 35, 109 So.2d 356 (1959) (personal injury); Toler v. Ow *212 ens, 231 Miss. 753, 97 So.2d 728 (1957) (negligent installation of floor furnace); Oxford Production Credit Assn. v. Bank of Oxford, 196 Miss. 50, 16 So.2d 384 (1944) (implied contract of bank to repay deposit); J. H. Leavenworth & Son, Inc. v. Hunter, 150 Miss. 245, 116 So. 593 (1928) (landowner’s right to recover for wrongful cutting of timber).
We are of the opinion that United Zinc Cos. v. Harwood, 216 Mass. 474, 103 N.E. 1037 (1914), cited in Knox Glass Bottling Co. v. Underwood, 228 Miss. 699, 89 So.2d 799 (1956) is not authority for the position of cross-appellants here. Further, we are of the opinion that the lower court correctly denied the pleas in bar, and we affirm on the cross-appeal.
REVERSED AND REMANDED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and HAWKINS, JJ., concur.
APPENDIX
"November 8, 1979
Hon. J. Robertshaw Robertshaw & Merideth P. 0. Drawer 1498 Greenville, Miss. 38701
Hon. William E. Spell Sullivan, Hunt, Spell, Henson & Chapman Suite 1224, 200 E. Pascagoula Street Jackson, Miss. 39201
Hon. Fred C. DeLong Campbell & DeLong P. O. Box 1856 Greenville, Miss. 38701
Hon. Ralph Rood Gholson, Hicks & Nichols P. O. Box 1111 Columbus, Miss. 39701
Re: Liberty Savings & Loan Association v. Charles A. Mitchell, Et Al; Circuit Court, Washington County, No. 7705
Gentlemen:
With reference to the motions of the Defendants to dismiss the above cause under Sec. 11-53-25, Mississippi Code of 1972, and for failure of Plaintiff to adequately respond to discovery, I have heard your oral arguments and have considered the matter.
Sec. 11-53-25, Mississippi Code of 1972, is mandatory unless good cause be shown to the contrary. Miss. Cent. R. Co. v. Brookhaven Lumber & Mfg. Co., 147 So. 813 (1933). In instances where the Clerk fails to move the Court to dismiss or where the Court does not dismiss on its own motion, Defendant may file a motion to dismiss because of failure of Plaintiff to prosecute his suit. Osborne v. Vince, 129 So.2d 345 (1961).
The original Declaration in this cause was filed against the Defendant Mitchell on February 17, 1975. On August 10, 1977, an order was entered by this Court allowing Plaintiff to amend its Declaration by adding the Additional Defendants. On May 28, 1976, Defendant Mitchell filed interrogatories and requests for production of documents to Plaintiff, and on November 16, 1978, interrogatories of the Additional Defendants to the Plaintiff were filed. Various motions were heard and disposed of by the Court.
On February 10,1978, a motion was filed by Plaintiff to set a date for trial and to set motions and discovery deadlines. On April 21, 1978, after a conference with all attorneys involved and with their approval, said motion was considered by the Court and an order was entered:
(1) Setting the trial on March 5, 1979, in vacation, by agreement of all parties.
*213 (2) Setting Defendants’ pleas in bar to be heard on August 9, 1978.
(3) Setting the deadline for completion of discovery in regard to Defendants’ pleas in bar on July 7, 1978.
(4) Setting the deadline for completion of discovery and filing pre-trial motions with regard to the case in chief on January 1, 1979.
Several days prior to March 5, 1979, the date set for trial, the Court was advised that Plaintiff had not fully complied with the discovery sought by Defendants and, although no formal order of continuance was entered, the cause was continued at Plaintiff’s instance with no objection from the Defendants. Discovery in fully responding to Defendants’ Interrogatories has still not been completed by Plaintiff. In fact, at the hearing on the motions to dismiss, Plaintiff’s attorney suggested that the Court set a new date in January, 1980, for the completion of discovery.
Subsequent to the above continuance, three terms of Circuit Court, to-wit, the April, July and September, 1979 terms were held in this county with no action being taken by Plaintiff to obtain a trial setting. Prior to the November, 1979 term of this Court the Defendants filed their motions to dismiss and the Plaintiff’s attorney appeared at the docket setting for said November, 1979 term to request a future setting of this cause.
I realize that this is a complicated case requiring extensive discovery, but there must be a time limit beyond which the rights of Defendants may be seriously prejudiced by the delay. In my opinion, good cause has not been shown by the Plaintiff for its failure to bring this cause to trial and I am dismissing the cause under Sec. 11-53-25, Mississippi Code of 1972.
Defendants’ attorneys will prepare the proper order, submit same to Plaintiff’s attorneys for approval as to form, and present to me for signature. It is my impression of the law that dismissals under the above Section should be without prejudice and the order should so provide.
Yours very truly,
/s/ B. B. WILKES CIRCUIT JUDGE
BBW:kn”

. Appellees cross-appeal from an order denying pleas in bar.

. In addition, the case was held in abeyance for approximately one (1) year due to a related matter pending in the United States District Court. The district court action was ultimately dismissed in May, ¡977.